60 P.3d 79 (2002)
148 Wash.2d 169
CITY OF TACOMA, a Municipal Corporation, Petitioner,
v.
The WILLIAM ROGERS COMPANY, INC., Respondent.
No. 71050-3.
Supreme Court of Washington, En Banc.
Argued March 12, 2002.
Decided December 19, 2002.
As Amended January 8, 2003.
*80 Harding Roe, Kari Sand, Asst. Tacoma City Attorneys, Tacoma, for Petitioner.
Vandeberg, Johnson & Gandara, James Krueger, Daniel Montopoli, Tacoma, for Respondent.
Franklin Dinces, Dinces Law Firm, Seattle, amicus curiae on behalf of Washington Staffing Association.
Thomas Carr, Seattle City Attorney, Cynthia Seu, Asst., Seattle, amicus curiae on behalf of City of Seattle.
Christine Gregoire, Attorney General, Donald Cofer, Asst., Cameron Comfort, Asst., Anne Egeler, Asst., Olympia, amicue curiae on behalf of the Department of Revenue.
CHAMBERS, J.
The City of Tacoma contends that the trial court erred in ordering a partial refund of municipal business and occupation (B & O) taxes to the William Rogers Company, Inc., doing business as Evergreen Staffing (Evergreen). The trial court held that Evergreen, a temporary staffing service, was a mere agent or paymaster of its clients and therefore the wages paid to its workers were deductible as a "pass through" expense. We reverse and hold that Evergreen functioned as the actual employer of its temporary workers and is thus liable for the tax.
B & O tax is a tax on the gross revenue of a business. Because this tax is on gross *81 income, the Department of Revenue and the City of Tacoma adopted a rule excluding from gross income receipts that are strictly "pass through" reimbursements for advances. The rule provides an exemption when the taxpayer receives reimbursement for advances made on behalf of a customer within its business, and also exempts services for which the taxpayer's customer is solely liable. Thus, a travel agency that collects ticket fares on behalf of an airline does not include the ticket fare in its gross income, because the travel agent is collecting the fare as an agent of the client.[1]

FACTS
Evergreen is a temporary help service[2] that provides temporary clerical workers and other workers to client firms throughout the Puget Sound. Its main office is in Tacoma. Evergreen functions as the employer of record, withholding payroll taxes and filing the employer's state and federal tax returns. A very small portion of Evergreen's business consists of providing a payroll service to those clients who hire their own workers.
Evergreen recruits its workers through advertising, referrals, and other services. Prospective workers fill out an employment application, after which Evergreen evaluates their skills and abilities. Clerical workers are tested on typing and computer software skills. Laborers are given an orientation and shown a video on industrial safety. After evaluation, workers are placed in Evergreen's database as available for assignment. They are provided with an employee handbook that "gives them basic instruction on how to perform their job." Verbatim Report of Proceedings at 36-37. The handbook states, "You remain our employee no matter where we assign you to work." Clerk's Papers (CP) at 72. Employees are entitled to certain paid holidays and vacation days, the cost of which is incorporated into the billing rate.
When a client requests a temporary worker, Evergreen quotes a billing rate and a charge for any special services such as background checks. Sometimes Evergreen fills the position from its inventory of available workers, but more often must advertise for qualified personnel. The client provides the necessary work space, equipment, tools, and materials required by the temporary worker. The worker is not paid except when performing work for a client. Evergreen's billing to its clients is in the form of a bill of sale.
Evergreen guarantees satisfactory performance by the workers and agrees to provide all payroll functions. The client agrees to provide a suitable workplace and adequate training, and assumes responsibility for losses to equipment used by the worker and for compliance with health and safety standards. Evergreen provides a money-back guaranty to its clients, and if the client is dissatisfied or fails to pay, Evergreen remains liable for paying the worker. Evergreen does not describe itself as the agent of its clients.
Tacoma levies a B & O tax on businesses operating within the city limits. The tax is not an income tax. It is based on gross income from business activity conducted within the city, with no deductions allowed for costs incurred in running the business. Tacoma Municipal Code (TMC) 6.68.070,.220. Until 1996, Evergreen paid the tax without deducting the wages paid to its workers. However, in 1996, Evergreen learned about a Revenue Policy Memorandum issued by the State Department of Revenue to clarify the question of when a business qualifies for deductions under WAC 458-20-111 (State Rule 111). Evergreen then sought a refund of state B & O taxes from the Department of Revenue. The department initially rejected the request but later reversed its decision and refunded $257,167 for wages and payroll taxes that had been paid to Evergreen's employees by its *82 clients and "passed through" to the employees by Evergreen. CP at 327. The department found that although Evergreen was the employer of record, it was functioning solely as a payroll agent.
Having succeeded on the state level, Evergreen applied to Tacoma for a similar refund of city B & O taxes paid during the same period. The City denied the refund. On appeal, the Tacoma hearing examiner ruled against the city. The examiner concluded that Evergreen was entitled to a refund of $37,508.80 for taxes overpaid during the two years preceding the refund request.[3] CP at 25. Tacoma then appealed to Pierce County Superior Court, which ruled for Evergreen, concluding that the control exercised by Evergreen's clients over the employees was so pervasive that it amounted to "basically exclusive control" and Evergreen merely advanced the wages on behalf of its clients. RP at 316. The city petitioned this court for direct review.

ANALYSIS
Because the B & O tax is based on gross income, no deduction is permitted for expenses involved in conducting a business.[4] TMC 6.68.070. However, because amounts that merely "pass through" a business in its capacity as an agent cannot be attributed to the business activities of the agent, such amounts are not taxable. See Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue, 103 Wash.2d 183, 188, 691 P.2d 559 (1984). Thus, the city has adopted an administrative rule that allows taxpayers to deduct advances or reimbursements from gross income as "pass through" payments where the liability of the taxpayer is solely that of an agent:
The word "advance," as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees for the customer or client.
The word "reimbursement," as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees for the client.
The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, other than as agent for the customer or client.
There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.
City of Tacoma, Department of Tax & License, Rule 111 (1984).[5]
Rule 111 provides several examples of how the exception is intended to work. For example, an automobile dealer who collects from a buyer, in addition to the sales price, the licensing fees and taxes, is not required to pay the B & O tax on the fees and taxes collected and paid to the government. Similarly *83 an attorney advancing filing fees and other fees on behalf of the lawyer's client is not required to pay B & O tax on the reimbursed fees.[6]
In two previous cases concerning State Rule 111, this court has held that in a traditional "pass through" scenario, the client has sole liability for an expense paid on its behalf and is responsible for advancing the cost to the taxpayer or reimbursing the taxpayer. The first concerned payments made by a law firm to attorneys in another city on behalf of the client. The parties stipulated that the out of town attorneys understood they were working directly for the clients. Christensen, O'Connor, Garrison & Havelka v. Dep't of Revenue, 97 Wash.2d 764, 769, 649 P.2d 839 (1982). The second held that filing fees paid by a lawyer on behalf of a client are tax deductible because the Rules for Lawyer Discipline forbade the law firm from advancing fees to the client on a nonrefundable basis. Walthew, 103 Wash.2d at 186, 691 P.2d 559. In these cases, the taxpayer clearly had no liability for the payments.
Evergreen relies very heavily upon a third case decided by this court interpreting Rule 111, Rho Co. v. Dep't of Revenue, 113 Wash.2d 561, 782 P.2d 986 (1989). The taxpayer in Rho supplied manufacturers with temporary workers with technical engineering skills. In addressing whether the taxpayer was acting as an agent or as a principal in employing and paying the workers, the Board of Tax Appeals restricted its analysis to the parties' written contracts.
This court held that the board erred in relying solely on the contracts. We held that determination of an agency relationship is not controlled by the manner in which the parties contractually describe their relationship. Rho, 113 Wash.2d at 570, 782 P.2d 986. We further held that the standard definition of agency should be used in analyzing Rule 111, absent any specific legislative or regulatory statement to the contrary. Rho, 113 Wash.2d at 573, 782 P.2d 986. We concluded that the record was inadequate to decide the agency issue and remanded to the tax board for specified further findings. Evergreen and the trial court have erroneously construed our specific instructions on remand in Rho as the holding in the Rho case. We take this opportunity to clarify our holding in Rho.
Rule 111 provides that there may be excluded from taxable amounts any money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession. In Rho we explained that the taxpayer had to prove that the advance in question was made pursuant to an agency relationship. The existence of that agency relationship is not controlled by how the parties described themselves in their contract documents, and standard agency definitions should be used in analyzing the existence of the agency relationship.
When a taxpayer meets its burden and establishes the existence of an agency relationship, a second question must be asked: whether the taxpayer's liability to pay the advance "constituted solely agent liability." Rho, 113 Wash.2d at 573, 782 P.2d 986. If a taxpayer assumes any liability beyond that of an agent, the payments it receives are not "pass through" payments, even if the taxpayer uses the payments to pay costs related to the services it provided to its *84 client. Walthew, 103 Wash.2d at 189, 691 P.2d 559.
Evergreen fails to meet even its first burden, to demonstrate an agency relationship with its clients for the purpose of providing employees. Rho denied that it was the employer of the engineers; in fact, it was not licensed to provide such engineering services. Rho, 113 Wash.2d at 568, 782 P.2d 986. But while Rho argued that the documentary evidence did not accurately reflect the reality of its business activities, Evergreen stipulates to being the employer of the workers. As Mr. Rogers testified:
It is absolutely my understanding that the temp employees, when they are assigned to work as an Evergreen Staffing employee, they are the employees of my company, the William Rogers Company. No doubt in the world in my mind about that.
RP at 38.
As we stated in Rho, "If Rho is the employer, then Rho is liable in its own right for the payment, and Rule 111 does not apply." Rho 113 Wash.2d at 569, 782 P.2d 986.
We conclude that Evergreen has failed to establish that it paid its temporary workers pursuant to an agency relationship.
Even if Evergreen had established agency, the wages can be considered as a "pass through" expense only if Evergreen acts solely as the agent of its clients for the purpose of paying those wages. On the second prong of the test, in Rho we remanded and directed the Board of Tax Appeals to focus on the following factors.
If the clients' control over the personnel was so pervasive that it should be deemed the employers of the personnel for purposes of B & O taxation, and Rho's control consisted of little more than paying the personnel once they were hired, then Rho should be deemed to be a mere paymaster who pays the personnel only as an agent for the clients. The areas in which control will be important will include hiring, compensation, work assignment, supervision and termination.
Rho, 113 Wash.2d at 573, 782 P.2d 986. This holding was specific to the case and should not be read as the sole method of determining agency. Control over hiring, compensation, work assignment, supervision, and termination were the critical factors under the facts presented in Rho. They are, however, not the exclusive factors to consider when determining whether advances are made "solely" as the agent of a principle. We will examine the findings of fact relevant to Evergreen.
Finding of fact 5 demonstrates that Evergreen was not acting solely as an agent but is in the business of providing temporary services. CP at 322. Evergreen is the employer of record for the workers, and labeling the worker as an employee of Evergreen is an essential part of the service provided to clients. Evergreen provides the workers with an employee handbook identifying them as employees of Evergreen. As employer of record, Evergreen withholds income and employment taxes and files all tax returns for the workers. It is also responsible for complying with the Washington Industrial Insurance Act, Title 51 RCW. It conducts safety inspections of the work sites, and responds in the event of an on-the-job injury.
Compensation is one of the most significant factors in determining the relationship between a principal and an agent. Regardless of whether it receives reimbursement from its clients, Evergreen is responsible for paying the workers. Evergreen argues that in paying its workers it acts within the scope of its authority as an agent, and the client is ultimately liable for the obligation. However, this argument fails because Evergreen has sole liability to pay the workers. For example, Evergreen offers its clients a guaranty of satisfaction. When the client is not satisfied with a worker's performance and invokes this guaranty, only Evergreen is liable for the payment. Also, where a client is for any reason unable or unwilling to pay the worker, Evergreen is liable for making the payment. If Evergreen had only agency liability, it would not be making payments that were unauthorized by the principal.
Furthermore, Evergreen grants its temporary workers certain paid holidays and accrued vacation time. Billing rates incorporate these charges, but if the temporary worker fails to take any holiday or vacation time, Evergreen does not refund the cost to the client. Thus, Evergreen does not pay *85 holiday and vacation time as the agent of the client.
In fact, Evergreen and its employees negotiate a salary. Evergreen then negotiates a rate with its clients. The employees do not know how much the client is paying Evergreen for their time and the clients do not know how much Evergreen is paying the employees. The record demonstrates that Evergreen is acting as the provider of temporary employment rather than as a payroll master.
Evergreen also exerts considerable control over hiring. Evergreen advertises for workers, requires them to complete employment applications, and tests their skills before deciding whether to hire them. Evergreen then places the workers on an "available for assignment" list. When a client requests a worker, Evergreen determines the job skills required and then selects one or more suitable candidates from its pool of workers available for assignment. While the client makes the final decision whether to accept the worker, the ultimate control over work assignments lies with Evergreen, which is responsible for determining which workers to make available for interview and in some instances will select the worker to fill the position.
Termination is also under the control of Evergreen because a worker can remain an employee of Evergreen, on an "available for assignment" list, even when terminated from a jobsite. CP at 323, 325. Whether Evergreen chooses to remove an unsatisfactory employee from the list or hold him or her in an inactive status, the effect is the same. In either case, it is Evergreen, and not the client, who controls whether the worker will remain actively employed.
The trial court concluded that "[t]he customer exercises pervasive control over the temporary workers and exclusive control at the work site, except as it may relate to the work site injuries." CP at 326. The court also concluded that "payments made to Evergreen by its customers for the services of the temporary workers are reimbursements for advances." Id. However, these are conclusions of law rather than findings of fact, regardless of how the trial court labeled them. If a conclusion of law is incorrectly denominated as a finding of fact, it is reviewed as a conclusion of law. Alexander Myers & Co. v. Hopke, 88 Wash.2d 449, 460, 565 P.2d 80 (1977) (citing Neil F. Lampson Equip. Rental & Sales Inc. v. W. Pasco Water Sys., Inc., 68 Wash.2d 172, 174, 412 P.2d 106 (1966); Kane v. Klos, 50 Wash.2d 778, 789, 314 P.2d 672 (1957)). This court reviews conclusions of law de novo. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996). Further, the court erroneously interpreted the Rho court's instructions on remand as the court's holding and sole test for determining whether payments qualify as "pass through" advances. Thus, Evergreen does not act solely as the agent of the clients in its relationship with the workers.

CONCLUSION
Accordingly, we reverse the superior court and hold that Evergreen is liable to pay B & O taxes on the payments received from clients for the labor of its employees.
SMITH, JOHNSON, IRELAND, BRIDGE and OWENS, JJ., concur.
ALEXANDER, C.J. (concurring in the dissent).
I agree with Justice Sanders that we should affirm the trial court. I write separately simply to indicate that my agreement with Justice Sanders is based solely on the conclusion we both reach that the William Rogers Company, Inc., doing business as Evergreen Staffing qualifies for the "pass-through" exemption set forth in Tacoma's administrative rule 111. The facts of this case are essentially identical to those in Rho Co., Inc. v. Department of Revenue, 113 Wash.2d 561, 782 P.2d 986 (1989), and the decision in that case should dictate our ruling here. I am not, however, prepared to join Justice Sanders' conclusion that the funds representing labor costs do not constitute gross income. As the majority observes, Evergreen has not made that argument and, thus, we should not address it.
MADSEN, J., concurs with ALEXANDER, C.J.
*86 SANDERS, J. (dissenting).
The result reached by the majority is a product of its expansive reading of the City of Tacoma's tax provisions. As such, it counters the long-standing canon of statutory construction that any ambiguity in revenue-generating statutes be "construed most strongly against the government, and in favor of the citizen." Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917); Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wash.2d 889, 904, 31 P.3d 1174 (2001) (Sanders, J., dissenting) (quoting Dep't of Revenue v. Hoppe, 82 Wash.2d 549, 552, 512 P.2d 1094 (1973)). The majority opinion is further flawed by its failure to first consider whether the funds Evergreen collected from clients constitute gross income before addressing whether they are exempt as pass-through payments.[1] I conclude these funds do not meet the definitions of gross income in the Tacoma Municipal Code, and, even if they did, they would nevertheless be exempt as pass-through payments per our decision in Rho Co. v. Dep't of Revenue, 113 Wash.2d 561, 782 P.2d 986 (1989).
A business and occupation (B & O) tax is imposed on a taxpayer's revenue "for the act or privilege of engaging in business activities" in the jurisdiction of the taxing authority. E.g., RCW 82.04.220; Tacoma Municipal Code (TMC) 6.68.220. When, as here, the revenue is generated from rendering of services by the taxpayer, the basis for the tax is the compensation received in consideration. Walthew, Warner, Keefe, Arron, Costello & Thompson v. Dep't of Revenue, 103 Wash.2d 183, 187, 691 P.2d 559 (1984); RCW 82.04.220, .070, .080; cf. Swedish Hosp. Med. Ctr. v. Dep't of Revenue, No. 86-28, Bd. of Tax Appeals, (Wash. Nov. 25, 1987), available at 1987 WL 114607, at *7.
The City of Tacoma imposes a B & O tax on businesses within its jurisdiction by virtue of TMC 6.68.220:
There is hereby levied upon and there shall be collected from every person as hereinafter provided, for the act or privilege of engaging in business activities within the City of Tacoma ... a license fee or occupation tax, sometimes herein referred to as the "tax," in amounts to be determined by application of rates given against value of products, including by-products, gross proceeds of sales or gross income of business, as the case may be....
This provision is essentially identical to its state counterpart, RCW 82.04.220 ("There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be."). As the plain text of TMC 6.68.220 makes evident the City of Tacoma imposes a B & O tax on a taxpayer's "gross proceeds of sales or gross income of business." This phrase, which hereinafter will be referred to simply as "gross income," cf. Walthew, 103 Wash.2d at 186-88, 691 P.2d 559, is subject to further definitions in the city code:
"Gross proceeds of sales" means the value proceeding or accruing from the sale of tangible personal property and/or for services rendered ....
TMC 6.68.060 (emphasis added).
The term "gross income of the business" means the value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, compensation for the rendition of services ....
TMC 6.68.070 (emphasis added).

*87 The term "value proceeding or accruing" means the consideration, whether money, credits, rights or other property expressed in terms of money, actually received or accrued ....
TMC 6.68.080 (emphasis added).[2] Thus, funds collected are includable in a taxpayer's gross income only if and to the extent they are consideration for services rendered. TMC 6.68.060, .070; cf. RCW 82.04.070,.080. That is the starting point to determine whether the funds Evergreen collected from its clients are subject to the City of Tacoma's B & O tax.
The majority, however, overlooks this threshold issue and concerns itself only with whether the funds Evergreen collected from its clients meet the exemption in the city's administrative rule 111 (City of Tacoma, Department of Tax & License, Rule 111). But Rule 111 exempts money that otherwise would have qualified as gross income. If the money does not even constitute gross income, we need not concern ourselves with the exemption; the money is not subject to B & O tax to begin with. TMC 6.68.220.
This premise is not new, for it stems from our decision in Walthew, 103 Wash.2d 183, 691 P.2d 559. There we addressed State Rule 111 (WAC 458-20-111), which is identical to the City of Tacoma's Rule 111, in light of the definition of gross income in RCW 82.04.080. We discussed our earlier decision in Christensen, O'Connor, Garrison & Havelka v. Dep't of Revenue, 97 Wash.2d 764, 649 P.2d 839 (1982), which set forth a three-element test to determine whether funds are exempt as pass-through payments pursuant to Rule 111. Christensen held payments to a taxpayer are excluded from gross income if
(1) it is a customary reimbursement for an advance made to procure a service for the client, (2) the taxpayer does not or cannot render the service, and (3) the taxpayer was not liable for the payment. Christensen, 97 Wash.2d at 768, 649 P.2d 839. With respect to the third element, Christensen explained this requirement is met if the taxpayer is not liable for making the payment "except as the agent of the client." Id. at 769, 649 P.2d 839. Thus, as we later noted in Walthew, a fundamental basis for the exclusion in Rule 111 is agencypayments are excluded if the taxpayer's obligation to make them was "solely agent liability." Walthew, 103 Wash.2d at 188, 691 P.2d 559 (discussing Christensen).
We further noted that, in contrast to Rule 111, "[n]othing in the statute [RCW 82.04.080] refers to exceptions on the basis of agency and liability." Id. at 187-88, 691 P.2d 559. "[T]he statute's obvious intent [is] to tax only gross income which is `compensation for the rendition of services' (RCW 82.04.080) or `consideration ... actually received or accrued' (RCW 82.04.090)." Id. at 188, 691 P.2d 559 (emphasis added). Since the Tacoma Municipal Code provisions at issue here are the same in all important respects, compare TMC 6.68.060-.080 with RCW 82.04.070-.090, the same is true here: The City of Tacoma may impose B & O tax only on compensation or consideration received by Evergreen for services rendered by Evergreen. See Med. Consultants N.W., Inc. v. State, 89 Wash.App. 39, 48, 947 P.2d 784 (1997) (excluding from gross income money collected by the taxpayer for services rendered by persons other than the taxpayer); Swedish Hosp. Med. Ctr., 1987 WL 114607, at *7 (excluding payments from gross income because the taxpayer "gained nothing in terms of compensation or consideration for any sales or services").
The majority's focus on Rule 111 and whether Evergreen has established an agency relationship pursuant to that rule is therefore premature. Before that even becomes an issue, the city must first establish the payments Evergreen collected to reimburse the cost of wages for the temporary workers constitute gross income per TMC 6.68.060-.080. This the city cannot do.
Evergreen collects payments from its clients to compensate (1) the cost of recruiting temporary workers for its clients and (2) the cost of wages to the temporary workers that are hired by Evergreen's clients. Only funds to compensate the costs in the first category constitute consideration for services rendered by Evergreen. Funds collected to compensate the cost of wages relate to services rendered by the temporary workers.
*88 They are therefore not includable in Evergreen's gross income, and hence not subject to B & O taxirrespective of whether they meet the test for pass-through payments in Rule 111. See TMC 6.68.070 (defining "`gross income of the business'" to include "`compensation for the rendition of services'"); Walthew, 103 Wash.2d at 187, 691 P.2d 559; cf. Med. Consultants N.W., 89 Wash.App. at 48, 947 P.2d 784 ("The monies MCN collects for medical exams are not for MCN's `rendition of services,' but rather are passed through to the actual renderers of the medical examination services, i.e., the physicians."). I would therefore affirm the superior court's decision that Evergreen is entitled to retain the amount in controversy, $37,508.50.
In the alternative, even if the funds collected by Evergreen to compensate the cost of wages could be considered gross income, they nevertheless qualify for the pass-through exemption in Rule 111. That exemption is based in the recognition that some receipts of a business are not for services rendered by the taxpayer, but rather are reimbursements for expenses paid by the taxpayer on behalf of a customer or client. The distinction is between the cost of doing business, which is part of the B & O tax base, and reimbursement for expenses of another, which is not. 1B Kelly Kunsch, Washington Practice: Methods of Practice § 72.24 (4th ed.1997).
Rule 111 provides, in part:
There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.
The foregoing is limited to cases wherein the taxpayer, as an incident to the business, undertakes, on behalf of the customer, guest or client, the payment of money... in procuring the service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer. It does not apply to cases where the customer, guest or client makes advances to the taxpayer upon services to be rendered by the taxpayer ... in carrying on the business in which the taxpayer engages.
City of Tacoma, Department of Tax & License, Rule 111 (1984); cf. WAC 458-20-111. Evergreen provides temporary staffing services that supply temporary workers to companies throughout the Puget Sound region. It does not provide the types of services that the temporary workers perform once hired by Evergreen clients. Examples include clerical services, such as typing, but also services such as moving lumber and working in bank vaults. As the superior court found, "[t]hese are services which Evergreen does not render and, in fact, does not have the capability of rendering." Clerk's papers (CP) at 326. Instead, Evergreen recruits temporary workers for its clients and functions as the employer of record for the workers. Evergreen withholds income and payroll taxes, files state and federal tax returns, and provides each temporary worker his or her wages once the worker is hired by an Evergreen client. In other words, Evergreen's role is to procure services for its clients which Evergreen itself cannot render. The money paid by Evergreen to those who render those services for its clients, i.e., the temporary workers, is incident to Evergreen's business and therefore qualifies for the pass-through exemption in Rule 111.
Rule 111 additionally provides:
The word "advance" as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees for the customer or client. The word "reimbursement" as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees for the client.
The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, other than as agent for the customer or client.
*89 City of Tacoma, Department of Tax & License, Rule 111 (1984); cf. WAC 458-20-111. The majority devotes most of its analysis to this portion of Rule 111, but its resolution is not true to our decision in Rho Co. v. Dep't of Revenue, 113 Wash.2d 561, 782 P.2d 986 (1989).
The situation in the case at bar is on all fours with the situation in Rho. Like Evergreen, Rho Company, Inc. was in the business of supplying other companies with temporary workersengineers to be precise. Rho, 113 Wash.2d at 563, 782 P.2d 986. When a client needed an engineer, Rho would check its available bank of personnel for a suitable candidate. Id. at 564, 782 P.2d 986. If no suitable engineers were available, Rho would recruit engineers to match the client's needs. Id. With Rho acting as an intermediary, the client and the engineer would negotiate salary and other employment conditions. Id. Once the employment was set up, the engineer was subject to the client's guidance with respect to job assignments and the duration of employment. Id. The client was responsible for supervising the worker, evaluating his or her performance, providing tools and materials, and for terminating the engineer. Id. Rho's clients did not compensate the temporary workers directly; instead the money was funneled through Rho, which in turn paid the workers and withheld required taxes. Id. at 563-64, 782 P.2d 986. The amounts collected by Rho from its clients included not only compensation for wages paid by Rho to the engineers, but also profit on behalf of Rho for procuring engineers for its clients. Id. at 565, 782 P.2d 986.
Evergreen operates in the same manner. When a client of Evergreen needs temporary workers, Evergreen first determines whether there are any available candidates in its "`available for assignment'" list. CP at 324 (superior court's findings of fact). Unless the position involves only general job skills, Evergreen usually recruits suitable personnel to match its client's needs. Although Evergreen is the employer of record for the temporary workers, the decision of whether a worker will obtain temporary employment with an Evergreen client is made by the client. It is also the client's responsibility to supervise the worker once hired by the client, evaluate his or her performance, provide tools and materials, and determine the duration of employment. Evergreen's clients do not compensate the temporary workers directly; instead the money is funneled through Evergreen. The amounts collected by Evergreen from its clients include "the hourly rate of the worker, a `gross margin' charged by Evergreen (which includes overhead and profit), any charges for special services requested by the customer, such as background checks, etc., and any benefits to be paid to the temporary worker." CP at 324 (finding of fact 22).
Returning to Rho, based on Rho's operation of its temporary staffing service we analyzed the applicability of Rule 111 under the three-prong Christensen test. We noted there was no question as to the applicability of the first two elements: that the payments are "`customary reimbursements for advances made to procure a service for the client'" and "`involve services that the taxpayer did not or could not render.'" Rho, 113 Wash.2d at 567-68, 782 P.2d 986 (quoting Christensen, 97 Wash.2d at 769, 649 P.2d 839). We said "[t]he clients customarily paid Rho for procuring the engineering services rendered by the technical personnel, and Rho did not itself perform these services." Rho, 113 Wash.2d at 568, 782 P.2d 986. Likewise, Evergreen's clients pay Evergreen to procure services rendered by temporary workers; services Evergreen itself does not perform. Thus, the first two elements of Christensen are also met here.
Our analysis of the third element of the Christensen test in Rho posed a two-pronged question: First, did Rho act as an agent for its client in paying the engineers, and second, if so, was Rho's liability to the engineers solely that of an agent? Rho, 113 Wash.2d at 571, 782 P.2d 986.
With respect to the first prong, we set forth the applicable test as whether the "clients consentedeither expressly or impliedlythat Rho would act under the clients' control." Id. at 571, 782 P.2d 986. Whether there is an express contractual establishment of an agency relationship is not determinative; rather the "standard definition of agency should be used in analyzing Rule 111...." *90 Id. at 573, 782 P.2d 986. That definition, nowhere to be found in the majority opinion, is as follows:
"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."
Walter v. Everett Sen. Dist. No. 24, 195 Wash. 45, 48, 79 P.2d 689 (1938) (quoting RESTATEMENT OF AGENCY § 1) (1933); see also Matsumura v. Eilert, 74 Wash.2d 362, 368, 444 P.2d 806 (1968) (citing RESTATEMENT (SECOND) OF AGENCY § 1 (1958)). Although agency is a legal concept (i.e., a relationship created by law), the existence of an agency relationship "`depends upon the existence of required factual elements.'" Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 940, 845 P.2d 1331 (1993) (quoting RESTATEMENT (SECOND) OF AGENCY § 1, cmt. b). Whether an agency relationship has been created is therefore a question of fact. Nordstrom Credit, Inc., 120 Wash.2d at 940, 845 P.2d 1331; Mullen v. N. Pac. Bank, 25 Wash.App. 864, 877, 610 P.2d 949 (1980).
The superior court found an agency relationship did in fact exist between Evergreen and its clients. CP at 326 ("In paying the temporary workers' wages, Evergreen acted on behalf of its customer and as the agent of the customer.") (finding of fact 36). This finding is entitled to great weight on appellate review. Lorang v. Lorang, 42 Wash.2d 539, 541, 256 P.2d 481 (1953); Williams v. Bevis, 152 Wash. 469, 479, 278 P. 193 (1929). Our role is limited to determining "whether substantial evidence exists to support the findings." Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 712, 732 P.2d 974 (1987); Schmechel v. Ron Mitchell Corp., 67 Wash.2d 194, 197, 406 P.2d 962 (1965) (finding of fact may be rejected on appeal only if reached on a "wholly erroneous basis"); Lorang, 42 Wash.2d at 541, 256 P.2d 481 (finding of fact may be rejected only if the result of patent abuse of discretion). "`Substantial evidence' is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Fred Hutchinson Cancer Research Ctr., 107 Wash.2d at 712, 732 P.2d 974.
There is ample evidence to support the superior court's finding an agency relationship existed here. Facts indicating consent on behalf of both Evergreen and its clients that Evergreen acted on its clients' behalf and subject to their control include, but are not limited to: (i) Evergreen's role as recruiter of workers to suit the clients' needs; (ii) Evergreen's role as employer of record for the clients' temporary employees; (iii) Evergreen's role as payor of workers' wages; (iv) Evergreen's role as withholder of payroll taxes; (iv) Evergreen's role as filer of necessary tax returns; (v) Evergreen's collection of fees to cover, not only workers' wages, but also its own compensation and profit for the above services; (vi) that clients have final say on whether to hire a temporary worker suggested by Evergreen and, if so, for how long; and (vii) the fact the temporary workers do not get paid by Evergreen until they are hired by an Evergreen client.
The majority, however, refuses to follow the superior court's factual finding. See majority at 83-84. Instead, the majority engages in a de novo review of the facts presented and concludes, based on Evergreen's admission that it is the employer of record of the temporary workers, "that Evergreen has failed to establish that it paid its temporary workers pursuant to an agency relationship." Majority at 84. The majority's analysis not only improperly rejects the superior court's factual finding but also disregards our holding in Rho that formality does not control whether agency exists. Rho, 113 Wash.2d at 569-70, 782 P.2d 986.
The majority recasts some findings of fact as conclusions of law in a blunt attempt to justify its de novo review. It is true conclusions of law mislabeled as findings of fact are reviewed as conclusions of law, e.g., Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986) (citing Woodruff v. McClellan, 95 Wash.2d 394, 396, 622 P.2d 1268 (1980)); however, as noted above, the existence of an agency relationship is a question of fact, not law. Nordstrom Credit, Inc., 120 Wash.2d at 940, 845 P.2d 1331; Mullen, 25 Wash.App. at 877, 610 P.2d 949. Instead of "hesitat[ing] to disturb the findings of the trial court upon *91 the facts" as we ought, Swift v. Starrett, 117 Wash. 188, 188, 200 P. 1108 (1921), today's majority cannot rush quickly enough to replace the superior court's factual findings with its own. The superior court's finding of agency is amply supported by the record.
As for the second prong of the third element of the Christensen testwhether the taxpayer's liability to the temporary workers was solely that of an agentwe said in Rho:
Resolution of this issue will require analysis of the control over the contract personnel that was exercised by Rho and by the clients. If the clients' control over the personnel was so pervasive that it should be deemed the employers of the personnel for purposes of B & O taxation, and Rho's control consisted of little more than paying the personnel once they were hired, then Rho should be deemed to be a mere paymaster who pays the personnel only as an agent for the clients. The areas in which control will be important will include hiring, compensation, work assignment, supervision and termination.

Rho, 113 Wash.2d at 573, 782 P.2d 986 (emphasis added).
Analysis of each of these areas reveals the superior court correctly found the clients' control over the temporary workers was so pervasive that Evergreen should be deemed their agent and paymaster. Although Evergreen is the employer of record for the temporary workers, the ultimate decision on hiring and firing with respect to a client is made by the client, not Evergreen. As for compensation, it is true the temporary workers are directly compensated by Evergreen (on behalf of the clients). But the majority makes it appear as if Evergreen pays the workers regardless of whether they are employed by an Evergreen client. Not so. The superior court's unchallenged finding of fact 16 provides "temporary workers are not paid unless and until they go to work for a customer of Evergreen." CP at 323. Finally, decisions as to work assignment and supervision are also firmly ensconced in the client.
Thus, the third element of the Christensen test is also met with respect to the payments Evergreen collected from its clients to reimburse the cost of workers' wages. Consequently, these payments qualify for the pass-through exemption in Rule 111. This is an independent ground to affirm the superior court.
I dissent.
NOTES
[1] Both parties used the travel agency business as an example during oral argument.
[2] "`[T]emporary help service'" is defined by the American Staffing Association as "`a service whereby an organization hires its own employees and assigns them to clients to support or supplement the client's work force in work situations such as employee absences, temporary skill shortages, seasonal workloads, and special assignments and projects.'" Edward A. Lenz, Co-Employment: Employer Liability Issues in Third-Party Staffing Arrangements 10 (3d ed.1997).
[3] The TMC provides for a two-year statute of limitations: "No refund or credit shall be allowed with respect to any payments made to the Director more than two years before the date of such application." TMC 6.68.375.
[4] The dissent suggests we should first consider whether the funds representing labor costs constitute gross income. Respondents do not make that argument and this court will not review a case on a theory different from the theory presented at trial. Matthias v. Lehn & Fink Prods. Corp., 70 Wash.2d 541, 543, 424 P.2d 284 (1967). See also RAP 13.7(b) (providing that "the Supreme Court will review only the questions raised in the ... petition for review"). Moreover, by the plain language of the ordinance, these labor costs are part of gross income. See TMC 6.68.070 (defining "`gross income of the business'" as "the value proceeding or accruing" from business transactions without any deduction on account of ... labor costs); and TMC 6.68.080 (defining "`the value proceeding or accruing'" as "consideration ... expressed in terms of money, actually received or accrued."). The amount of money Evergreen "actually receive[s]" from its clients includes the labor costs of the temporary workers it provides to the clients. The Court of Appeals and tax board cases cited by the dissent were analyzed under the Rule 111 "pass through" exemption.
[5] This is identical to State Rule 111, WAC 458-20-111.
[6] The rule also describes what is not a "pass through" reimbursement:

On the other hand, no charge which represents an advance payment on the purchase price of an article or a cost of doing or obtaining business, even though such charge is made as a separate item, will be construed as an advance or reimbursement. Money so received constitutes a part of gross sales or gross income of the business, as the case may be. For example, no exclusion is allowed with respect to amounts received by (1) a doctor for furnishing medicine or drugs as a part of his treatment; (2) a dentist for furnishing gold, silver or other property in conjunction with his services; (3) a garage for furnishing parts in connection with repairs; (4) a manufacturer or contractor for materials purchased in his own name or in the name of his customer if the manufacturer or contractor is obligated to the vendor for the payment of the purchase price, regardless of whether the customer may also be obligated; or (5) any person engaging in a service business or in the business of installing or repairing tangible personal property for charges made separately for transportation or traveling expense.
Rule 111.
[1] The majority suggests that because respondents did not specifically argue that funds collected by Evergreen are not "gross income," and thus exempt from the business and occupation (B & O) tax, we should not consider this issue on review. Majority at 82 n. 4. I disagree. Deciding whether the funds are subject to the B & O tax is precisely the issue before this court, and whether they are "gross income" is an integral part of that judgment. Moreover, there is no bar to this court considering issues not raised at trial when the interests of justice so dictate. RAP 1.2(c); see, e.g., Tuerk v. Dep't of Licensing, 123 Wash.2d 120, 124, 864 P.2d 1382 (1994); Kruse v. Hemp, 121 Wash.2d 715, 721, 853 P.2d 1373 (1993); Harris v. Dep't of Labor & Indus., 120 Wash.2d 461, 468, 843 P.2d 1056 (1993); El Coba Co. Dormitories, Inc. v. Franklin County Pub. Util. Dist., 82 Wash.2d 858, 860, 514 P.2d 524 (1973). Certainly, where interpretation of the Tacoma Municipal Code is integral to resolving the issues before the court, we may do so on review.
[2] Tacoma Municipal Code (TMC) 6.68.060, .070, and .080 are identical to RCW 82.04.070, .80, and .090, respectively.