
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parentage and Support of | No. 76260-5-I |
| ELLA GRACE SCHMIDT | DIVISION ONE |
| JOHN PATRICK OSMAN, | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| TINA ANNELIESE SCHMIDT, | |
| Appellant. | FILED: November 13, 2017 |

APPELWICK, J. — Tina Schmidt challenges the trial court's modification of the decision-making provision of the parenting plan for her daughter. She also challenges the removal of a provision providing extended family members' access to the child. We affirm.

## FACTS

Tina Schmidt and John Osman have a daughter, Ella Schmidt, born on June 17, 2011. On March 25, 2014, a final parenting plan was entered by agreement in Atlanta, Georgia. Ella resided a majority of the time with Tina. The order required the parents to confer and consult in good faith on major decisions about the child's religious upbringing, education, nonemergency health care, and extracurricular activities. If the parties were unable to agree upon a major decision, the order required that one parent send an e-mail describing the disputed issue, and gave

the other parent 48 hours to respond. If the parents could not agree on a decision after the required conferral, Tina had final decision-making authority. The final consent order permitted Tina to relocate to Seattle with Ella. In anticipation of the move, the parenting plan included two residential schedules: one before Tina relocated and one after she relocated. The parenting plan also contained two provisions concerning extended family:

> In the event that the Father's family is in the Mother's city of residence, the Mother shall accommodate the Father's family so that they can see the Child so long as the Child is in town.

> In the event that the Mother's family is in the Father's city of residence or in Chicago with the minor child, the Father shall accommodate the Mother's family so that they can see the Child so long as the Child is in town.

In May 2014, Tina moved from Georgia to Federal Way, Washington. John decided to relocate to Washington, to be closer to Ella. Without giving the required notice under the Georgia order, John moved to Washington in November 2015.[1] Tina purchased a house in Port Orchard, Washington in July 2015. In December 2015, Tina notified John via counsel that she intended to move by the end of the following month. Tina moved to Port Orchard in May 2016.

In Seattle, John filed a petition for modification of the parenting plan. He petitioned the court to modify the residential schedule. He also sought to modify the provisions on dispute resolution and decision-making authority on education and medical decisions. The parties stipulated that there was adequate cause to

---

[1] In November 2015, before Tina learned that John had relocated to Washington, she filed to modify the parenting plan in Georgia. She incurred $8,000 in attorney fees, which the trial court awarded to her in this proceeding. This is not an issue on appeal.

proceed with modifying the parenting plan. During the proceedings, Psychologist Dr. Wendy Hutchins-Cook completed a parenting evaluation of the parties. Hutchins-Cook made recommendations for a final parenting plan. She recommended that John and Tina have joint decision-making, and that final decision-making should be made via arbitration, instead of by Tina.

For its final order, the trial court considered the petition to modify the Georgia parenting plan, the child's best interest, the agreed order of adequate cause to change the parenting plan, and the other evidence before it at the November 2016 trial.[2] The court found that it was in the best interest of the child for the parents to have joint decision-making for nonemergency health care and education. The trial court eliminated the provision that each parent should make Ella available to the other parent's family when visiting the city where the extended family resides. Tina seeks review of the trial court's modification of decision-making authority over health care and education and the removal of the family visit provision.

## DISCUSSION

Tina challenges the trial court's modification of the parenting plan. First, she argues the trial court erred in finding a substantial change of circumstances material to Tina's sole decision-making authority. Second, she argues the trial court erred in finding that the best interests of the child required that John have joint decision-making authority over health care and education decisions. Third,

---

[2] The residential schedule adopted by the trial court is not an issue on appeal.

she argues the trial court erred in removing the travel and family visitation provision of the Georgia parenting plan. Fourth, she argues that the trial court erred in failing to enter conclusions of law.

We review a trial court's decision to modify a parenting plan for abuse of discretion. In re Marriage of Zigler, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. In re Marriage of Fiorito, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). We uphold the trial court's findings of fact if they are supported by substantial evidence. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). We review conclusions of law to determine whether factual findings that are supported by substantial evidence in turn support the conclusions. In re Marriage of Myers, 123 Wn. App. 889, 893, 99 P.3d 398 (2004).

I. Substantial Change of Circumstances

Tina argues that the court erred in modifying the two nonresidential provisions, because it did not find that a substantial change of circumstances material to those provisions had occurred.

Modifications of parenting plans are governed by RCW 26.09.260 and RCW 26.09.270. In re Marriage of Adler, 131 Wn. App. 717, 723, 129 P.3d 293 (2006). The party seeking modification must establish adequate cause to alter the existing plan—typically that requires evidence of a significant change in circumstances unknown at the time of the original plan. In re Marriage of McDevitt, 181 Wn. App. 765, 769, 326 P.3d 865 (2014). To modify the nonresidential provisions, the parent must show a substantial change of circumstances of either parent or child, and the

adjustment is in the best interest of the child. RCW 26.09.260(10). A substantial change in circumstances justifying modification must be a change occurring after entry of original decree or a fact unknown to the trial court at that time. In re Marriage of Hansen, 81 Wn. App. 494, 500, 914 P.2d 799 (1996).

The parties here agreed to the threshold requirement of RCW 26.09.260— adequate cause to modify the parenting plan. In doing so, they stipulated that the Georgia parenting plan needed to be modified. The trial court may rely upon stipulations of the parties and does not err in failing to independently evaluate whether modification was appropriate. See In re Marriage of Naval, 43 Wn. App. 839, 844-45, 719 P.2d 1349 (1986) (holding that a party's stipulation to change in circumstances satisfies the statutory requirement).

The modification statute does not require a particularized finding that a change of circumstance must be found as to any individual provision of a parenting plan which a parent wishes to have modified. RCW 26.09.260(1), (10). Not surprisingly, neither does any case law. Once the necessary threshold determination is made, the entire order is before the court for modification. The trial court committed no error by addressing any provision of the parenting plan without making a change of circumstances finding particular to that provision.

## II. Evidence of Best Interest of the Child

Tina next argues that there was no evidence that joint decision-making authority is in the child's best interest. She argues that the court failed to specify any finding of fact on which it concluded that joint decision-making was in the

child's best interest. She also asserts that the court did not adopt Hutchins-Cook's reasons for recommending joint decision-making.

The trial court found that, due to John's move to Washington, joint decision-making was now in the best interest of the child. The final order stated in pertinent part:

> The Court finds the father's relocation to Washington is a substantial change of circumstances and it is in the best interests of the child for the parties to have joint decision[-]making. The court finds the decision[-]making provisions in the Georgia order have not been followed by the mother with respect to her duty to consider and engage in meaningful discussion with the father. In fairness, the father acquiesced to much such decision[-]making, but has stepped up to request more involvement since his move to Washington.
>
> The court essentially adopts the parenting evaluator's suggestions for a method of dispute resolution where the parties are unable to agree, and that is reflected in the parenting plan entered this date. The parties themselves are amenable to the use of a parenting coach, and arbitration for unresolved disputes, which bodes well for its effectiveness.

The trial court relied on Dr. Hutchins-Cook evaluation and recommendations. Regarding decision-making, the evaluation states:

> Counselors for both Tina and John report that their clients are making improvements in the areas of refraining from focusing on the other parent or their anger and disappointment with the other parent. This benefits their communication. Better communication between the parents is supportive of Ella.
>
> The information I have gathered leads me to the conclusion that Ella would benefit from a change in the joint decision-making provision of the Georgia Parenting Plan. A review of the e[-]mail threads provided earlier in this report demonstrates non-compliance by Tina.
>
> It is not unusual for the parent having more time with the child to be the one initiating the decision-making process. Tina typically come forward with a declaration of what she is going to do; sometimes with a good description of logistics. John is to respond within 48 hours or

her decision holds. When John was in Atlanta, he typically did not respond, and Tina rightfully moved ahead.

John has been in Washington since November 2015, approximately 10 months. His perspective, which is fairly accurate, is that Tina bypasses the discussion part of the decision-making, or when he objects or makes a suggestion or proposal that is different than what she wants, her response is that she is not in agreement. The Georgia Plan specifies joint decision-making with Tina making the final decision when there is disagreement. Tina does in fact, in my opinion, bypass the first important step in the decision-making process as it is presented.

Ella has two loving parents, both of whom want to be involved in her life. This involvement includes participation in decision-making about her life. This is not happening. This report includes recommendations to address this problem area.

In addition to the evaluation, the trial court also heard testimony from Hutchins-Cook that Tina was not following the decision-making process from the Georgia parenting plan. Further, it heard John testify that he relocated from Atlanta to Washington to be closer to Ella. And, it heard that John believed Tina attempted to reduce his involvement in their child's life, partly through minimizing his decision-making.

In her evaluation, Hutchins-Cook stated that Ella "would benefit from a change in the joint decision-making provision of the Georgia Parenting Plan . . . [because] [i]t is not being implemented as described." When asked why she thought joint decision-making was in the child's best interested, she testified,

Both parents want to be involved in this child's life. Both are active, intelligent, interested parents. Communication between them. Communication about what Ella may or may not be participating in the future. Important for Ella to the degree she'll recognize that her father's involved in the process or not.

7

The trial court had ample evidence from the testimony and recommendation of the evaluator to determine that the change of decision-making was in the child's best interest. It stated it adopted the parenting evaluator's suggestions for a method of dispute resolution when the parents are unable to agree. This establishes the factual basis for the change just as if the trial court had stated explicitly that it found the testimony of the evaluator persuasive. The record leaves no doubt as to the source of the facts on which the trial court concluded that it was in the best interest of the child for the parents to have joint decision-making.

III. Chicago Travel Provision

John's proposed parenting plan asked the court to remove the provision that either parent make Ella available to the other parent's family. Tina argues the trial court erred in removing the provision. At trial, Tina testified that she wanted the provision to remain. She contends that the trial court made no findings regarding the provision, as required under CR 52.

Requiring both parents to make Ella available to the other parent's family when traveling was a provision providing residential time with nonparents. In light of Troxel v. Granville, 530 U.S. 57, 72, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (recognizing the fundamental rights of parents to decide their children's visitation with third parties) requiring either parent to provide access to other family members was inappropriate. The trial court rightly removed this reciprocal provision. No finding of fact was required for the trial court to make such a change. The trial court did not abuse its discretion.

IV. <u>Findings and Conclusions of Law</u>

Tina argues that the trial court erred in failing to enter conclusions of law as required by CR 52(a)(1) and CR 52(a)(2)(B) on the mandatory form. She contends that the trial court erred because under the section entitled "findings and conclusions" on the mandatory form the trial court did not specifically delineate any conclusions of law. On the final order of findings the court states,

> [I]t is in the best interests of the child for the parties to have joint decision[-]making for non-emergency health care and education. The court finds that the father's relocation to Washington is a substantial change of circumstances and it is in the best interests of the child for the parties to have joint decision[-]making.

These are conclusions of law required to modify the nonresidential provisions of the parenting plan: that there was a substantial change and that is in the best interest of the child. RCW 26.09.260(10). That they are mislabeled or not separately set forth is not grounds for reversal. <u>See</u> <u>City of Tacoma v. William Rogers Co.</u>, 148 Wn.2d 169, 181, 60 P.3d 79 (2002) (affirming that a conclusion of law erroneously labeled as a finding of fact is nevertheless reviewed as a conclusion of law).

V. <u>Attorney Fees</u>

Tina requests attorney fees as well as sanctions. She relies on opposing counsel's intransigence in her request for fees. She argues that opposing counsel's brief had numerous misstatements and frivolous arguments. We do not find her assertion of intransigence credible. Tina also requests an award of sanctions for opposing counsel's failure to cite to the record in his response brief. Imposing sanctions is discretionary. RAP 10.7; <u>Ventenbergs v. City of</u> Seattle, 163

Wn.2d 92, 109, 178 P.3d 960 (2008).  We decline to award fees or impose sanctions.

We affirm.

WE CONCUR: