[Nos. 20489-4-II; 20544-1-II.   Division Two.   December 5, 1997.]

MEDICAL CONSULTANTS NORTHWEST, INC., *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.

*Christine O. Gregoire, Attorney General*, and *Cameron G. Comfort* and *Susan Y. Price, Assistants*, for appellant.

*Heather L. Francks* of *Stokes, Eitelbach & Lawrence, P.S.*, for respondent.

HUNT, J. — The State of Washington appeals the trial court's order to refund to Medical Consultants Northwest, Inc. (MCN) excess business and occupation taxes collected, plus interest. The trial court ruled that payments received by MCN were not taxable as gross income because they

were not compensation for services provided by MCN. We affirm.

## FACTS

### A. Procedure

MCN filed a lawsuit to recover taxes paid under protest to the State Department of Revenue ("the Department") in 1991 and 1994. MCN alleged that the Department erroneously assessed a business and occupation tax against certain payments MCN received from its clients. MCN alleged that these payments were not taxable as gross income subject to Washington's business and occupation (B&O) tax because the payments were not compensation for services provided by MCN. Rather, the payments represented advances from clients to MCN to pay independent physicians who provided services to MCN's clients.

At trial, MCN and the Department submitted an agreed statement of stipulated facts. Based on these stipulated facts, the trial court concluded that the payments should have been excluded from MCN's gross income and ordered the Department to refund MCN's excess tax payments, with interest calculated pursuant to RCW 82.32.060(5).

On appeal, the Department contends that the trial court misinterpreted the stipulated facts and erroneously concluded that the payments should have been excluded from MCN's gross income. On cross-appeal, MCN argues that the trial court erred in concluding that RCW 82.32.060(5), rather than RCW 4.56.110, applied to the calculation of postjudgment interest. We affirm.

### B. Substantive Facts

#### 1. Medical Exams

The following facts are gleaned from the stipulation. MCN is in the business of providing objective medical opinions in the form of written reports. MCN's opinions are based on medical exams performed by independent physicians.

MCN is not licensed to practice medicine. MCN contracts with individual physicians to conduct independent medical examinations (IMEs) on behalf of MCN's clients. The IMEs are generally performed by a variety of specialists, who see patients either individually or as part of a panel of several examining physicians. The owner of MCN is a licensed physician, qualified to conduct exams in his specialty; he also serves as MCN's president and medical director.

The physicians perform as independent contractors, not employees of MCN. The physicians maintain their own staffs and practices, independent of MCN, and have absolute independence in their medical opinions. MCN publishes and distributes to the physicians, documents and a manual (MCN's Manual) which set forth the respective obligations of MCN and the physician. MCN enters into a written agreement with each physician that provides, "MCN will act on [p]hysician's behalf to facilitate [p]hysician serving as a [c]onsultant in medical matters."

MCN generally schedules IMEs on behalf of its clients. Most of the IMEs are conducted on MCN's premises, although some take place in the physicians' independent offices.

MCN's staff converts the results of a physician's completed examination into a final report to be sent to the client. But first MCN resubmits the report to the examining physician for signature. If this examining physician is not available to sign the final report, MCN's medical director can sign (and on rare occasion has signed) the final report on the examining physician's behalf.

### 2. Billing of MCN's Clients

MCN bills its clients for services provided both by MCN and by the independent physicians. The client pays the total fees for services in one check. Then, MCN forwards the allocable portion to the physician for services rendered. MCN's clients are aware that a portion of the MCN bill

represents the fee due the independent physicians who performed the medical examination.

MCN's Manual states: "The physician is paid on a per-patient basis, with payment made at the end of the month during which payment is received from the client . . . . Patient no-shows are not an uncommon occurrence. When this occurs, you will be reimbursed from the client as a no-show fee."

Prior to 1995, MCN's administrative staff orally informed the physicians that if a client did not pay MCN for an examination performed, MCN would not be obligated to pay the physicians. MCN's current agreement with the physicians, effective in 1995, states in pertinent part that:

> (8) MCN will make every reasonable effort to collect fees for any consultation services provided by [the physician]. However, if MCN is unable to collect the fee from a client for consultation services provided by Consultant, MCN is not obligated to pay [the physician] for his services.

MCN has never encountered a client who has failed to pay its bill. If a physician is later called upon to testify on behalf of a client, the client arranges and pays for that service directly.

## ANALYSIS

### A. Standard of Review

■ Generally, findings of fact that are supported by substantial evidence will not be disturbed on appeal. *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). But exceptions to this rule have been made in cases where the court's findings are not based on oral testimony. *In re Estate of Reilly*, 78 Wn.2d 623, 479 P.2d 1, 48 A.L.R.3D 902

(1970)[1]; *But see In re Marriage of Stern*, 68 Wn. App. 922, 928, 846 P.2d 1387 (1993). [2]

## B. Trial on Stipulated Facts

On appeal, the Department asserts that it stipulated only that MCN made *representations* to the physicians disclaiming liability, both orally and in written agreements. The Department contends that these representations do not support the trial court's findings. The Department assigns error to the trial court's findings that: (1) "only the [plaintiff's] client has liability for paying the physician and if the client does not pay the physician then the physician understands that [the plaintiff] has no liability either primarily or secondarily for payment,"[3] and (2) MCN has no liability for paying the physicians, except as an agent for its client.

■ Factual stipulations are generally binding on the parties and the court. *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 940 P.2d 252 (1997). "When a case is submitted to the trial court upon stipulated facts, neither party will be heard to suggest on appeal that the facts were other than as stipulated. Relief from a stipulation may be had only in the trial court." *State ex rel. Carroll v. Gatter*, 43 Wn.2d 153, 155, 260 P.2d 360 (1953). "The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced." *Best v. District of Columbia*, 291 U.S. 411, 415, 54 S. Ct. 487, 489, 78 L. Ed. 882 (1934) (citing *Oscanyan v. Arms Co.*, 103 U.S. 261, 263, 26 L. Ed. 539 (1880).

---

[1](Where deposition testimony is before an appellate court and the witness in question did not testify orally, the appellate court will determine from the deposition what finding should have been made.)

[2]The proper standard of review of findings based on a trial by affidavit is whether the findings are supported by substantial evidence and whether the trial court has made an error of law.

[3]This finding was part of the trial court's written decision. The written decision was incorporated into the written findings of fact and conclusions of law to the extent necessary to clarify the court's conclusions of law.

Here, the finding that MCN's clients assumed sole liability for paying the physicians is clearly supported by the stipulated facts. The trial court buttressed its findings with the following explanation:

> The Department stipulates to the fact that if MCN is unable to collect the fee from the client for the medical examination then MCN is not obligated to pay the physician for their services. That is, they admit as fact, that only the client has liability for paying the physician and if the client does not pay the physician then the physician understands that MCN has no liability either primarily or secondarily for that payment. To the extent they do have liability, i.e. when the client does pay, [its] liability to forward the payment to the physician. At the time of the initial audit this *modus operandi* was pursuant to a verbal understanding between MCN and the examining physicians. Since 1995 it has been reduced to writing. There is no evidence that the current writing changed how things have always been done and the Department conceded as much during oral argument. The Department simply says in footnote 4 on page 12 of their trial brief that even though they stipulate as fact that MCN does not pay or have to pay the physician if the client does not pay they "question whether this is true." This is confusing. They stipulate that it is true in the Stipulation of Facts, page 6, lines 2-10, which is corroborated by Exhibit K . . . . On these facts the court must find that the Department has stipulated that only the client and not MCN is liable for the payment to the physicians . . . .

(Footnotes omitted.)

Even if the Department stipulated that MCN made only certain *representations* regarding liability, the sole reasonable inference is that MCN is not obligated to pay the physicians unless MCN is first paid by the client. Absolutely no evidence was offered by the Department to suggest otherwise. Accordingly, the trial court properly relied on the stipulated facts and all reasonable inferences drawn therefrom.

### C. Exclusions From Washington's Business and Occupation Tax

Washington levies a business and occupation tax on a

business's gross income, including compensation for "rendition of services." RCW 82.04.080. Gross income is broadly defined, with no deductions allowed for expenses involved in conducting the business. RCW 82.04.080, *Rho Co. v. Department of Revenue,* 113 Wn.2d 561, 782 P.2d 986 (1989).

Although business expenses are not deductible, the Department has adopted WAC 458-20-111 ("Rule 111"), an administrative rule that excludes from the definition of gross income certain "pass through" expenses, as follows:

The word "advance" as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees for the customer or client.

The word "reimbursement" as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees for the client.

The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, other than as agent for the customer or client.

There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.

The foregoing is limited to cases wherein the taxpayer, as an incident to the business, undertakes, on behalf of the customer, guest or client, the payment of money, either upon an obligation owing by the customer, guest or client to a third person, or in procuring a service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer. It does not apply to cases where the customer, guest or client makes advances to the taxpayer upon services to be rendered by the taxpayer or upon goods to be purchased by the taxpayer in carrying on the business in which the taxpayer engages.

WAC 458-20-111.

█ The Washington Supreme Court has analyzed Rule 111 in three reported cases. In *Christensen, O'Connor, Garrison & Havelka v. Department of Revenue*, 97 Wn.2d 764, 769, 649 P.2d 839 (1982), the court held that Rule 111 excludes from gross income "pass through" payments when the following three conditions are met: (1) The payments are customary reimbursements for advances made by the taxpayer to procure a service for the client; (2) the payments involve services that the taxpayer did not or could not render; and (3) the taxpayer is not liable for paying, except as the agent of the client. *Christensen*, 97 Wn.2d at 768-69.

In *Walthew, Warner, Keefe, Arron, Costello & Thompson v. State Dep't of Revenue*, 103 Wn.2d 183, 691 P.2d 559 (1984), the court interpreted Rule 111 in conjunction with RCW 82.04.080, the statute authorizing a business and occupation tax on services. In *Walthew*, a taxpayer law firm sought to exclude from its gross income, client reimbursements for court reporters, physicians, and process servers. The court found that these expenses were the obligation of the client and that the law firm, at most, assumed liability for these payments only as agent for the clients. The court held that "pass-through" payments of this type were not intended by the Legislature to be included in gross income and therefore were not subject to the state's business and occupation tax.

In *Rho*, the taxpayer was in the business of supplying temporary workers to engineering firms. The court focused on the third condition of the *Christensen* test and excluded from Rho's gross income, certain wages paid by Rho's engineering firm clients and passed on to the temporary workers. These wages were excludable only if Rho's obligation to pay the temporary workers resulted solely from its capacity as an agent for the clients. The court ruled that determination of an agency relationship should not be restricted to an analysis of the contract between the parties, but should also take into consideration the parties' actions. The court remanded the case to the Board of Tax Ap-

peals to determine whether Rho acted as the clients' agent in paying the temporary workers and, if so, whether Rho's liability to the temporary workers was solely that of an agent. *Rho*, 113 Wn.2d 561, 566-71.

Here, the first prong of the *Christensen* test is not in dispute. The second prong of the test is supported by the undisputed fact that MCN does not have a medical license and therefore *cannot* perform the medical examinations. The monies MCN collects for medical exams are not for MCN's "rendition of services," but rather are passed through to the actual renderers of the medical examination services, i.e., the physicians. Finally, the third prong of the *Christensen* test is satisfied because MCN is not obligated to pay an independent physician unless MCN is first paid by its client. If MCN is paid by its client, MCN's obligation to the physician is solely as an agent of its client. Accordingly, the trial court properly concluded that payments MCN receives for the purpose of paying independent physician bills are not subject to Washington's business and occupation tax.

## D. Postjudgment Interest

MCN argues that the trial court erroneously calculated postjudgment interest pursuant to RCW 82.32.060(5), which governs interest on tax refunds. MCN concedes that RCW 82.32.060(5) was properly used to calculate prejudgment interest, but contends that RCW 4.56.110(3), which governs interest on judgments *generally* and provides a higher interest rate, should have been used to calculate postjudgment interest in this case.

In *Columbia Steel Co. v. State*, 34 Wn.2d 700, 209 P.2d 482 (1949), the court held that principles of sovereign immunity govern whether the State is required to pay interest on a judgment.

> The right to sue the state, when accorded by statute, extends no farther than to grant the plaintiff the right to bring his action and . . . to recover against the state a judgment for the

amount due, not including interest unless the payment of interest by the state is also authorized by statute.

*Columbia,* 34 Wn.2d at 712; *see also Our Lady of Lourdes Hosp. v. Franklin County,* 120 Wn.2d 439, 842 P.2d 956 (1993).

The Legislature has since enacted a statute that waives this immunity and specifically authorizes interest to be paid on tax refunds. RCW 82.32.060 reads in pertinent part:

> (5) Any judgment for which a recovery is granted by any court of competent jurisdiction, not appealed from, for tax, penalties, and interest which were paid by the taxpayer, and costs, in a suit by any taxpayer shall be paid in the same manner, as provided in subsection (4) of this section, upon the filing with the department of a certified copy of the order or judgment of the court. Except as to the credits in computing tax authorized by RCW 82.04.435, interest at the rate of three percent per annum shall be allowed by the department and by any court on the amount of any refund, credit, or other recovery allowed to a taxpayer for taxes, penalties, or interest paid by the taxpayer before January 1, 1992. For refunds or credits of amounts paid or other recovery allowed to a taxpayer after December 31, 1991, the rate of interest shall be the rate as computed for assessments under RCW 82.32.050(2), less one percentage point.

MCN argues that the above-quoted statute applies only when the State voluntarily refunds excess tax payments, not when judgment is entered against the State. MCN argues that when judgment is entered against the State for a tax refund, the State must pay interest in accordance with RCW 4.56.110. RCW 4.56.110 provides in pertinent part:

> Interest on judgments shall accrue as follows:
>
> . . . .
>
> (3) Except as provided under subsections (1) and (2) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry thereof. . . .

▮ RCW 82.32.060 specifically addresses interest to be paid on tax refunds, including court-ordered judgments for refunds, whereas RCW 4.56.110 speaks to judgments generally. It is a well-settled rule of statutory construction that the specific prevails over the general. *S. Martinelli & Co. v. Washington State Dep't of Revenue*, 80 Wn. App. 930, 940, 912 P.2d 521, *review denied*, 130 Wn.2d 1004 (1996); *see also Muije v. Department of Soc. & Health Servs.*, 97 Wn.2d 451, 645 P.2d 1086 (1982).

We hold that RCW 82.32.060(5) controls the rate of interest here and that the trial court properly calculated interest under this statute. We therefore affirm.

HOUGHTON, C.J., and SEINFELD, J., concur.

Review denied at 136 Wn.2d 1002 (1998).