[No. 39487-1-II.   Division Two.   October 25, 2011.]

St. Joseph General Hospital, *Appellant*, v. The Department of Revenue, *Respondent*.

24

25

*Carla M. Dewberry* and *Roger L. Hillman* (of *Garvey Schubert Barer*) and *Jamal N. Whitehead* (of *Equal Employment Opportunity Commission*), for appellant.

*Robert M. McKenna*, *Attorney General*, *David M. Hankins*, *Senior Counsel*, and *Peter B. Gonick*, *Assistant*, for respondent.

¶1 BRIDGEWATER, J.[*] — We initially considered the issues in this business and occupation (B&O) tax case and issued our decision at *St. Joseph General Hospital v. Department of Revenue*, 158 Wn. App. 450, 242 P.3d 897 (2010). Our Supreme Court granted review and remanded for our reconsideration in light of its decision in *Washington Imaging Services, LLC v. Department of Revenue*, 171 Wn.2d 548, 252 P.3d 885 (2011). *St. Joseph Gen. Hosp. v. Dep't of Revenue*, 171 Wn.2d 1027, 259 P.3d 145 (2011).

[*] Judge Bridgewater, a retired judge of the Court of Appeals, Division II, is serving as judge pro tempore under CAR 21(c).

26

¶2 Our original decision addressed two primary issues: (1) whether the Board of Tax Appeals (Board) erred when granting a summary judgment motion in favor of the Department of Revenue's (Department) imposing of B&O taxes on St. Joseph Hospital (St. Joseph or the hospital) for amounts paid by Medicare beneficiaries and their Medigap insurers for copayments and deductibles and (2) whether money that St. Joseph collected and paid to Northwest Emergency Physicians (NEP) qualified as gross income under former RCW 82.04.080 (1961) or whether the hospital was entitled to a WAC 458-20-111 (Rule 111) exemption. *St. Joseph*, 158 Wn. App. at 463-65. We affirmed the Board's decision on the first issue, but we reversed the imposing of B&O taxes on the payments to NEP after determining that these monies did not qualify as gross income for the hospital and that the hospital was not entitled to a Rule 111 exemption. *St. Joseph*, 158 Wn. App. at 473-74. Our original analysis of the second issue, specifically our analysis of whether the NEP payments qualified as gross income, relied heavily on our decision in *Washington Imaging Services*, which our Supreme Court reversed. *St. Joseph*, 158 Wn. App. at 470-73 (discussing *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 153 Wn. App. 281, 222 P.3d 801 (2009), *rev'd*, 171 Wn.2d 548 (2011)).

¶3 On remand, we reconsider our analysis of whether the payments to NEP constitute gross income for the hospital and whether the hospital is entitled to a Rule 111 exemption. In light of our Supreme Court's analysis in *Washington Imaging Services*, we now hold that the payments to NEP qualify as gross income for the hospital and are subject to B&O taxes. Also, we adhere to our original decision that the hospital is not entitled to a Rule 111 exemption, although for different reasons. Accordingly, we now affirm the Board in all respects.

FACTS

¶4 We adopt in its entirety the facts as written in our original decision at *St. Joseph*, 158 Wn. App. at 456-58.

## ANALYSIS

### I. Gross Income

■■ ¶5 In our initial decision, we determined that St. Joseph's payments to NEP did not qualify as gross income subject to B&O taxes under former RCW 82.04.080. *St. Joseph*, 158 Wn. App. at 468-73. Generally speaking, we analogized St. Joseph's situation to the one in *Washington Imaging Services*. *St. Joseph*, 158 Wn. App. at 470-72. Like St. Joseph, Washington Imaging Services collected payments for services rendered by a third party and paid monies to those who actually provided specific services. *St. Joseph*, 158 Wn. App. at 470. We determined in both cases that these types of collected payments were not gross income to the collecting taxpayer. *St. Joseph*, 158 Wn. App. at 470-71 (citing *Wash. Imaging Servs.*, 153 Wn. App. at 290-91, 295). We relied on similarities between St. Joseph's and Washington Imaging Service's situations including that: (1) both lacked a medical license to perform the specific services performed by the third party, (2) both submitted bills that identified the third party's services, and (3) both paid monies to the third party service provider. *St. Joseph*, 158 Wn. App. at 470-71.

¶6 We also were not persuaded by the Department's argument that, unlike Washington Imaging Services, St. Joseph had liabilities to NEP in the absence of patient or insurance company payments. *St. Joseph*, 158 Wn. App. at 471-72. We did not consider the collecting taxpayer's liability to the third party service provider as a factor in our analysis because of our analysis in *Washington Imaging Services*, which treated any distinction as irrelevant. *St. Joseph*, 158 Wn. App. at 471-72. Moreover, we noted that former RCW 82.04.080 "does not require that there be no more than agent liability before money received is not included in taxable gross income" because, unlike the text of

Rule 111, such a requirement does not exist in the statute. *St. Joseph*, 158 Wn. App. at 472.

¶7 But, in a unanimous decision, our Supreme Court reversed our analysis in *Washington Imaging Services*, holding that, "Washington Imaging [Services] does not make the payments on behalf of the patients as their agent . . . the patients have no obligation to pay [the third-party service provider], and Washington Imaging [Services] does not act in an agent's capacity to pass payments from the patients through to [the third-party service provider]." *Wash. Imaging Servs.*, 171 Wn.2d at 552. Our Supreme Court emphasized that for "Washington Imaging [Services] to prevail on the argument that it acted only as a collection agent of [the third-party service provider], it must have collected money *owed to* [the third-party service provider]." *Wash. Imaging Servs.*, 171 Wn.2d at 557. Because the patients contracted for services *only with* Washington Imaging Services, and the registration forms, contracts with patient's insurers, and patient bills all established a payment obligation *only to* Washington Imaging Services, our Supreme Court held that Washington Imaging Services was not an agent collecting money owed by patients to the third party service provider. *Wash. Imaging Servs.*, 171 Wn.2d at 557. Our Supreme Court expressly stated that its holding applied regardless of what B&O tax liability provisions were included in the contract between Washington Imaging Service and the third party service provider. *Wash. Imaging Servs.*, 171 Wn.2d at 557.

¶8 On remand, St. Joseph argues that significant factual differences in their billing practices distinguish *Washington Imaging Services* and its applicability to this case. The hospital highlights that patients met with and knew their specific NEP physician and that patients received a separate bill for physician services that obligated patients to independently pay NEP. Because the crux of our Supreme Court's decision in *Washington Imaging Services* concerned whether patients had an independent obligation to pay a

third party provider for services rendered, we focus on the hospital's arguments related to this point. *Wash. Imaging Servs.*, 171 Wn.2d at 552, 557.

¶9 Our review of the record does not reveal support for the hospital's argument. There is no indication in the record that *patients* had an obligation to pay *the third party service provider*, here NEP, for the services rendered. In fact, the evidence in the record supports that *only* St. Joseph had payment obligations to NEP. Section 6.4 of the parties' contract expressly states that:

> On or before the 10th day of each month . . . *the Hospital shall pay* [NEP] 66.7% of gross professional *charges* for the prior month. The Hospital shall retain 33.3% of the gross professional fees in payment for its administrative duties, billing, contractual disallowances, bad debt, and other duties under this Agreement.

Board of Tax Appeals Records (BTAR) at 411 (emphasis added).

¶10 Also, deposition statements by Steve Peschek, who was a reimbursement manager for the corporation that owns and operates St. Joseph, are telling:

> Q. . . . Let's say there was a change of one percent and instead of collecting seventy percent of all of the gross charges and then subtracting your administrative costs you actually collected sixty-nine percent of what was actually billed.
>
> Then when you had made [sic] payments to [NEP] for the prior year they would have been paid more than you collected?
>
> A. In that particular example that would be correct.
>
> Q. And pursuant to the terms of this contract you would be contractually obligated to pay them that one percent extra?
>
> A. We were, per the terms of [the] contract, to pay them at a percentage of charges which we did, *whether that percentage that we agreed upon was a hundred percent accurate or not was the risk that both parties took.*

BTAR at 366-67 (emphasis added). Thus, the amount St. Joseph paid NEP did *not* depend on what payments the

hospital actually received from patients or their insurance providers. Rather, under the contract provisions, each month St. Joseph paid NEP an agreed percentage of the charges it had billed patients in the preceding month. And although the parties annually recalculated the percentage that St. Joseph would pay for the upcoming year's monthly payments based on actual gross receipts for the preceding year, the underlying payment duties always remained the same each year—that is St. Joseph had the sole obligation to pay NEP monthly for its services based on an agreed percentage of the amount charged to patients.

¶11 Accordingly, the most important fact in this case is indistinguishable from the facts in *Washington Imaging Services*. There is no independent obligation on patients to pay NEP for services rendered and St. Joseph did not make payments on behalf of its patients as the patient's agents. Thus, under *Washington Imaging Services*, the payments made to NEP qualify as gross income for St. Joseph.

## II. RULE 111 EXEMPTION

¶12 We previously determined that St. Joseph was not entitled to a Rule 111 exemption. *St. Joseph*, 158 Wn. App. at 465-68. Our Supreme Court recently clarified many parts of the Rule 111 exemption analysis. *Wash. Imaging Servs.*, 171 Wn.2d at 559-67. After applying the legal principles our Supreme Court recently articulated, we reach the same conclusion that St. Joseph is not entitled to Rule 111 exemption for its payments to NEP.

¶13 We originally evaluated three requirements under Rule 111 before a taxpayer may exclude from its gross income amounts received from a client: (1) it is a customary reimbursement or advancement made to procure a service for the client, (2) the taxpayer does not or cannot render the service, and (3) the taxpayer was not liable for the payment. *St. Joseph*, 158 Wn. App. at 465-66 (citing *Christensen, O'Connor, Garrison & Havelka v. Dep't of Revenue*, 97

Wn.2d 764, 768, 649 P.2d 839 (1982)). We determined that St. Joseph met the requirements for prongs one and two of this test, but it failed with regard to the third prong. *St. Joseph*, 158 Wn. App. at 467. We now hold that St. Joseph fails to satisfy the requirements for any of the *Christensen* test's prongs.

¶14 When evaluating the first prong of this test, we originally stated that "the amounts paid to emergency physicians via NEP were likely reimbursements or advances made in the ordinary course of the hospital's business. The hospital paid NEP before it received payment from the patient or the patient's insurance company." *St. Joseph*, 158 Wn. App. at 467 (citation omitted). But our Supreme Court has clarified that payments that are a "matter of the contract" cannot be considered "advances" within the meaning of Rule 111 and the first *Christensen* prong. *Wash. Imaging Servs.*, 171 Wn.2d at 563. As is now clear by our gross income analysis, the payments to NEP in this case are contractual obligations. Thus, the first *Christensen* prong is not satisfied.

¶15 We originally relied on *Medical Consultants Northwest, Inc. v. State*, 89 Wn. App. 39, 947 P.2d 784 (1997), *review denied*, 136 Wn.2d 1002 (1998), when stating the second *Christensen* prong was met because "like [Medical Consultants Northwest], [St. Joseph] is not licensed to perform the services NEP's physicians perform." *St. Joseph*, 158 Wn. App. at 467. In *Washington Imaging Services*, our Supreme Court expressly overruled *Medical Consultants* on this point and stated that "a business that provides medical services through physicians hired as independent contractors may be liable for B&O taxes on its gross income, regardless of the fact that the business itself is barred from practicing medicine under the corporate practices of medicine doctrine." *Wash. Imaging Servs.*, 171 Wn.2d at 564. Accordingly, here, St. Joseph could and did provide emergency room physician services through independently contracted NEP physicians. The second *Christensen* prong is not satisfied.

¶16 Finally, with regard to the third *Christensen* prong, we originally determined that St. Joseph had more than "only agency liability for the amounts it pays NEP" because of the hospital's contractual obligations to pay NEP regardless of actual payment receipts from patients. *St. Joseph*, 158 Wn. App. at 468. Our Supreme Court's analysis of the third *Christensen* prong, in *Washington Imaging Services*, stressed that where contractual obligations exist to pay a third party service provider the taxpayer's obligations cannot be characterized as " '*solely* agent liability.' " *Wash. Imaging Servs.*, 171 Wn.2d at 567. Here, we have already determined that St. Joseph's obligations to pay NEP are contractual. Thus, the hospital fails to satisfy the requirements of the third *Christensen* prong.

¶17 St. Joseph has failed to show that it meets any of the requirements that would entitle it to a Rule 111 exemption. Accordingly, the payments to NEP cannot be deducted from St. Joseph's gross income on which B&O taxes must be paid.

## III. CONCLUSION

¶18 Applying *Washington Imaging Services*, we now hold the St. Joseph's payments to NEP qualify as gross income for B&O tax purposes. The Rule 111 exemption does not apply and the NEP payments cannot be deducted from the gross income calculation. We now affirm the Board in all respects.

VAN DEREN, A.C.J., and HUNT, J., concur.